**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**STEPHEN THILKING,**

    **Plaintiff,**

v.                                                      **Case No.  8:04-cv-896-T-TBM**

**JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**O R D E R**

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is reversed and remanded.

I.

Plaintiff was forty-five years of age at the time of his administrative hearing. He stands 6', 0" tall and weighed 157 pounds. Plaintiff has a ninth grade education. His past relevant work was as a security officer, laborer, carpet installer, painter, meat clerk, decking laborer, chemist assistant, and forklift operator. Plaintiff applied for disability benefits and Supplemental Security Income payments in February 2001, alleging disability as of January 15, 2001, by reason of stomach, back, and leg problems; depression; and physical deterioration. Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ"). In essence, Plaintiff testified that he stopped working at his last job because he could not get along with people, he was having sleeping difficulties, and he suffered from depression. Regarding his depression, Plaintiff said that he worries all the time; he has difficulty sleeping unless he takes Trazodone; he does not have an appetite and does not eat sometimes; he does not care and likes to be left alone; he feels nauseated much of the time; his memory is not good; he does not complete tasks; he has difficulty controlling his anger; and he has had ideas of hurting himself. He also said that when he is in a social situation, he experiences anxiety attacks during which he has trouble breathing, hears a ringing sound, and feels like he has on blinders. Plaintiff does not shower and get dressed every day because he sometimes lacks the energy, either with or without medication. He can take Trazodone to help him sleep, but then he has difficulty getting up and functioning, so he is unable to take it every night. Plaintiff also takes Zoloft, which eases the tension.

Regarding his physical complaints, Plaintiff testified that he has pain in his back and left shoulder, numbness in three left fingers and his left toes, and a numb spot on his thigh. As to his back pain, Plaintiff testified that it is a constant throbbing and burning sensation in his lower back. Though it is mostly in the center of the lower back, sometimes the pain travels to his left hip. According to Plaintiff, it affects his ability to move, bend, and stand up. He also has problems with balance and sometimes cannot walk straight. As to his shoulder pain, Plaintiff testified that it is a throbbing pain in his left shoulder socket. He received some therapy, and he states that he was told that the muscle is weak because he does not use his arm. Regarding his stomach, Plaintiff stated that he vomits at least once every two weeks and sometimes twice a week. A bout of nausea lasts up to ten hours, when he will lie down and

2

drink a lot of water. He suspects this is caused by a problem with his pancreas. Plaintiff also indicated problems with his bowels and he suffers from diarrhea on an average of three times a day. He stated that each of these episodes lasts for about twenty minutes.

Plaintiff's last job was as a security officer at a casino, which entailed roving patrols and escorts. Plaintiff testified that he stopped working there because of he didn't get along with his co-workers, to whom he referred as "back stabbers." Prior to that, he installed carpet, which involved lifting, bending, kneeling, and kicking of the knee. He was unable to continue working on his knees because of the burning pain in his knees. Prior to that, he worked as a chemist assistant making paints, which entailed lifting, standing, bending, and stirring. Plaintiff also worked as a carpenter's helper, but that job ended when the project was completed, and he worked as a meat clerk in a grocery store, but that job ended because he had to work on holidays and he had difficulty working with the public. Additionally, Plaintiff previously worked as a pool decker.

Plaintiff estimated that he could lift about five or six pounds or a gallon of milk with his left arm; however, he is right-handed and can reach up or down with that hand. In his estimation, he could lift about twenty pounds using both arms. Plaintiff stated that he could stand for about 30 minutes before he experiences a throbbing pain in his back and knees. Then, he sits for about 10 to 20 minutes. If he sits for more than 30 minutes, he has the same problem in his back and knees. At that point, he must lie down or move around. Plaintiff testified that he spends most of the day lying down. He takes naps in the day for about an hour or an hour and a half at a time.

Plaintiff described himself as homeless and testified that he was living in his sister's shed and had previously lived in his mother's shed. He said does not clean his living space

because it does not get dirty.  Since he lives in a shed, he eats canned goods and does not cook.  He does not go out to restaurants; he does not have any hobbies; he does not read, listen to the music, or watch television.  He does not visit friends, nor do friends visit him. Plaintiff has a social worker and was seeing a psychiatrist.  He testified that it had been about nine or ten months since he last drank; previously, he would drink a twelve-pack on days when he was not working.  According to Plaintiff, he had never been fired from a job for drinking, he had not had a DUI, nor had he been arrested for drinking.  He was, however, charged with aggravated assault during a confrontation with his mother.  He indicated that he did not talk with his mother, brother, or sister.  Plaintiff was divorced in 1988.  Plaintiff no longer drives, and he indicated that he rode a bicycle for about an hour to appear at the hearing.  See Plaintiff's testimony (R. 334-58, 359).

The ALJ also took testimony from Anita Rothard, a vocational expert (hereinafter "VE"), who testified that if Plaintiff could not get along with anyone and could have no social contact at all, there would be jobs available that he could perform working by himself, but he should probably be in a hospital.  Upon an assumption that Plaintiff could work by himself with limited social contact with the public, employees, and supervisors; was limited to simple instructions and tasks; could lift or carry 15 to 20 pounds; and had no exposure to moving machinery and heights, he could work as a night shift janitor and cleaner of office buildings. The VE opined that 20-minute bouts of diarrhea three times a day would not affect his ability to perform this job, but the ALJ noted that if he wasn't on the job eight hours a day, he couldn't do the job.  Upon additional questioning, the VE opined further that Plaintiff would not be maintained as an employee if he was not able to attend work regularly or punctually or if he had to lie down and rest half the day.  See VE's testimony (R. 358-66).

4

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of May 16, 2003, the ALJ determined that while Plaintiff has a severe impairment or combination of impairments, he nonetheless had the residual functional capacity to perform a restricted range of light work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 12-21). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. See id. at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The Commissioner failed to fully and adequately follow the five step sequential evaluation process in this matter; and

(2) The Commissioner erred in her evaluation of the evidence. By such error, the Commissioner both misconstrued the residual functional capacity of the Plaintiff and failed to properly elicit the vocational expert's testimony.

By his first claim, Plaintiff argues that the ALJ erred at step-two of the sequential analysis by failing to identify with specificity which of Plaintiff's impairments constituted "severe" impairments under the Act. In Plaintiff's view, the ALJ's finding that he had "an impairment or combination of impairments considered 'severe'" was insufficient and results in the inability to ascertan whether the ALJ considered all of his alleged impairments.[1] Thus, Plaintiff urges that a remand for full and adequate development is required. (Doc. 20 at 6-9). The Commissioner concedes that the ALJ did not explicitly state which of Plaintiff's impairments were severe, but contends that this "procedural error" was harmless in light of the ALJ's finding that Plaintiff did in fact have an impairment or combination of impairments considered severe, discussion of all of the evidence of record, and residual functional capacity

---

[1] Plaintiff states that the need for a specific articulation of severity was evident in this case in light of his allegations of stomach and back problems, hypertension, depression, physical deterioration, symptoms of pancreatitis, nausea, frequent and urgent bowel movements, neuropathies and/or numbness of the hands and leg, lethargy, a significant anxiety disorder, sleep problems, and musculoskeletal pain and the fact that he was found to have progressive encephalopathy.

7

finding which indicated that he had considered Plaintiff's alleged impairments both singularly and in combination. (Doc. 21 at 6-7).

It is well-established that the Act and pertinent case law require the ALJ to consider each impairment, as well as the combined effect of all a claimant's impairments. 42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). Thus, at step two of the five-step evaluation process prescribed by the regulations, the ALJ is called upon to determine whether a claimant's impairments are severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). Under these regulations, if the claimant does not have an impairment or combination of impairments which significantly limits his ability to do basic work activities,[2] then he is not disabled. Id. In application, this inquiry is a "threshold" inquiry. It allows only claims based on the slightest abnormality to be rejected. Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). As indicated above, the ALJ must also consider at this step the combined effect of all of the claimant's alleged impairments even though none of the impairments, when considered individually, is severe or disabling. See, e.g. Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984); 20 C.F.R. §§ 404.1523, 416.923. In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled. See Bowen, 748 F.2d at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

---

[2]The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." Bowen v. Yuckert, 482 U.S. 137, 142 (1987) (citing 20 C.F.R. §§ 404.1521(b), 416.921(b)). Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling, as well as capacities for seeing, hearing, and speaking; understanding, remembering and carrying out simple instructions; responding appropriately to supervisors and fellow employees and dealing with changes in the work setting; and the use of judgment. Id.

8

Upon consideration, the court finds that the ALJ's step-two determination that "[t]he claimant has an impairment or combination of impairments considered 'severe,'" see (R. 20), was in accordance with controlling authority and does not require remand. See, e.g., Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987) (noting that, ". . . the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement at step two"); Council v. Comm'r of Soc. Sec., No. 04-13128 (11th Cir. Dec. 28, 2004) (unpublished)[3] (holding in part that, "the ALJ could not have committed any error at step two because he found that Council had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two"). Plaintiff's citation to non-controlling authority to the contrary is not persuasive. While an explicit finding with regard to the severity of each impairment alleged would facilitate subsequent review of the matter, the failure to do so does not amount to reversible error. To the extent Plaintiff suggests the ALJ did not consider each impairment alleged, see (Doc. 20 at 7-8), review of the ALJ's decision reveals otherwise, see (R. 14-17).[4]

Plaintiff's related contention that the ALJ could not have considered the combined effect of his impairments, is also unsupported. Here, at step two of the analysis the ALJ found that Plaintiff "has an impairment or combination of impairments considered 'severe'

---

[3]Unpublished opinions are not considered binding; however, they may be cited as persuasive authority. See United States v. Rodriguez-Lopez, 363 F.3d 1134, 1138 n. 4 (11th Cir. 2004); 11th Cir. R. 36-2.

[4]Plaintiff is correct that the ALJ did not discuss or mention "progressive encephalopathy." While that condition was noted by a non-examining state agency doctor (R. 131, 136) and in the initial disability determination (R. 38, 259-noting "alcoholic encephalopathy"), I was unable to find documentation of such in the medical record. Thus, the ALJ cannot be faulted for failing to address it.

based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(c)," and he acknowledged that if Plaintiff has a severe impairment, he must consider all other medically determinable impairments in the remaining steps of the sequential analysis. (R. 14, 20). Then, at step three of the analysis, the ALJ found that Plaintiff "has no impairment or combination of impairments which meets the criteria of any of the listed impairments described in Appendix 1 of the Regulations." (R. 17). Lastly, the decision also shows that the ALJ recognized his obligation to consider the combined effect of Plaintiff's impairments at the remaining steps of the sequential evaluation. See (R. 13, 19). Thus, the ALJ's decision adequately evidences consideration of the combined effect of Plaintiff's impairments. See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1553 (11th Cir. 1991); Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

By his second claim, Plaintiff argues that the ALJ failed to adequately and accurately evaluate certain evidence regarding his physical abilities.[5] In particular, Plaintiff asserts that, although the ALJ adopted the residual functional capacity (hereinafter "RFC") assessments of the two state agency doctors who opined that he retained the ability to perform a limited range of light work,[6] the ALJ failed to acknowledge that one of those doctors also limited him to four hours of walking and/or standing during an eight-hour workday. Plaintiff contends the

---

[5] Plaintiff does not challenge the ALJ's consideration of his mental limitations or the medical opinions related thereto.

[6] Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). And, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, * 6 (S.S.A).

10

ALJ should have either accepted this limitation or explained why he did not credit it. Had the ALJ adopted that limitation, Plaintiff states he would have been precluded from performing the only job identified by the VE and found disabled as a matter of law. He urges the court to apply the "treating physician" rule to this RFC opinion and order an award of benefits. (Doc. 20 at 10-12). The Commissioner responds generally that substantial evidence supports the ALJ's RFC determination and rejection of the four-hour limitation on standing/walking, and she sets forth reasons why that limitation is not credible. (Doc. 21 at 4-6).

Upon careful consideration, I conclude that the remand on this basis is warranted. Here, both state agency doctors opined that Plaintiff retained the ability to perform a *limited* range of light work.[7] See (R. 132-35, 187-90). As indicated by Plaintiff, one way in which J. Wolfe, M.D., found Plaintiff's range of light work diminished was in his ability to stand and/or walk for only four hours in an eight-hour workday.[8] See (R. 132). Although the ALJ found that both of the non-examining doctors' physical RFC opinions were "consistent with the medical evidence of record," see (R. 18-19), he did not address Dr. Wolfe's four-hour limitation on standing/walking or explain why he discounted it.[9] The ALJ erred by failing to do so. See Lucus v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990) (stating that an ALJ must

---

[7]Plaintiff was treated primarily by doctors at a community clinic and had one consultative physical evaluation (R. 124-26). The record does not contain any physical RFC opinions from treating or examining physicians.

[8]As indicated above, light exertional work requires the ability to stand/walk for six hours out of an eight-hour day. See SSR 83-10.

[9]While not raised by Plaintiff, it is noted that the ALJ also failed to explain why he rejected Dr. Wolfe's opinion that Plaintiff was limited to occasional kneeling, crouching, and crawling and had to avoid concentrated exposure to extreme heat or cold, see (R. 133, 135), and the other state agency doctor's opinion that he was limited to frequent stooping, kneeling, crouching, and crawling, see (R. 188).

11

state the weight accorded each item of impairment evidence the reasons therefore); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986) (same); Cowart v. Schweiker, 6623 F.2d 731, 735 (11th Cir. 1981) (same). This error is not harmless because, "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by the substantial evidence." Cowart, 662 F.2d at 735. Although the Commissioner argues that the four-hour standing/walking limitation is not supported by the record, that determination is to be made in the first instance by the ALJ. Furthermore, while I do not conclude that the restriction at issue is or is not supported by the medical record, it is worth noting that (1) Dr. Wolfe explained his RFC in part based on "wide based gait, very positive romberg, . . . vibratory sense loss . . . [and] sensory blunting," (R. 132); (2) the other reviewing doctor noted "severe p. [peripheral] neuropathy," (R. 188, 190); and (3) the consulting doctor reported that "there is markedly diminished vibratory sense over the distal extremities . . . Rombergs test is markedly abnormal with eyes closed . . . [and Plaintiff] could not walk heel to toe without losing his balance beyond 3 steps," (R. 126). To this end, the ALJ is reminded that it is impermissible for him to select certain evidence to support his reasoning while ignoring other record evidence that is contradictory. See McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence).

In sum, remand for further consideration is warranted on this ground. Despite Plaintiff's urging to the contrary, I am without authority to accept this limitation as true and reverse his case for an award of benefits.

Within this claim Plaintiff argues another basis for remand, namely, that the ALJ erred by failing to ask the VE to identify and explain any conflicts between her testimony and the Dictionary of Occupational Titles (hereinafter "DOT") in violation of Social Security Ruling 00-49, which provides that an adjudicator has an affirmative responsibility to ask about conflicts with DOT when a VE provides evidence. In order to avoid further error on remand, this argument is addressed in brief.

By this argument, Plaintiff contends that the DOT number given by the VE for the job of "janitor and cleaner, nightshift, office buildings," 381.687-030, is incorrect as it references a "patch worker." Plaintiff claims that even if this erroneous DOT number resulted from a transcription error, his search of the DOT for the position cited by VE and relied upon by the ALJ revealed only jobs that were characterized as either heavy or medium exertional work, contrary to the ALJ's RFC determination of light exertional work. As such, Plaintiff argues that substantial evidence does not support the ALJ's decision because those exertional levels exceeded his functional capacity. In his view, this error mandates reversal and an award of benefits because the light janitor/cleaner job identified by the VE was the only position that fit the hypothetical question set forth by the ALJ. (Doc. 20 at 12-15). The Commissioner concedes that the ALJ did not inquire of the VE consistent with the SSR 00-49, but she contends that the error is harmless because there is no actual conflict as it is clear that the VE was not referring to a "patch worker." (Doc. 21 at 7).

Upon review of the decision, the hearing transcript, and the DOT, I agree in large part with the Plaintiff. Here, the VE identified only one job that Plaintiff could perform based on the RFC set forth by the ALJ: that of janitor and cleaner, nightshift, office buildings, DOT

13

number 381.687-030.  See (R. 360).  That DOT number does in fact coincide with the position of patch worker.  See DOT # 381.687-030.  Moreover, upon my own brief review of the DOT, I was unable to find a light exertional janitorial or cleaning position consistent with that identified by the VE.[10]  Although the Commissioner asserts that there is no actual conflict, she does not identify the correct DOT number for the position referenced by the VE.  Accordingly, on remand, should this position again be cited by the VE and relied upon by the ALJ, the DOT number should be correctly stated.  As for Plaintiff's reliance on SSR 00-4p, he is correct that agency rulings are binding on all components of the Social Security Administration and the ALJ is so reminded.  It is unclear however, whether the *entirety* of that ruling is consistent with the Eleventh Circuit's ruling in Jones v. Apfel, 190 F.3d 1224, 1226 (11th Cir. 1999) (holding that the testimony of a VE "trumps" that of the Dictionary of Occupational Titles when the two are in conflict).  As that question was not squarely raised on this appeal, I decline to address it at time.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is not supported by substantial evidence or is not in accordance with the correct legal standards.  The decision is reversed and remanded for further proceedings before the Commissioner consistent with this Order.  Accordingly, the

---

[10] The position of "cleaner, housekeeping," i.e., maid, is identified as light exertional work.  See DOT # 323.687-014.  The description of that job, however, is not entirely consistent with that testified to by the VE.

14

Clerk is directed to enter Judgment in favor of the Plaintiff and to close the file, and the matter of fees and costs shall be addressed upon further pleadings.

**Done and Ordered** at Tampa, Florida, this 25th day of August 2005.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record